THE STATE OF OHIO, APPELLEE, *v.*
WARDEN, APPELLANT.

(No. CA-787 — Decided May 1, 1986.)

*John M. Nicholson,* assistant prosecuting attorney, for appellee.

*Andrea R. Yagoda,* for appellant.

MILLIGAN, J. Although originally charged with attempted murder, R.C. 2903.02 and 2923.02, felonious assault, R.C. 2903.11, and intimidation, R.C. 2921.03, a Guernsey County common pleas jury found the defendant guilty of felonious assault on March 3, 1982.

Following sentence, the defendant prosecuted a direct appeal resulting in an affirmation of the verdict, judgment, and sentence.

The instant proceedings are the result of post-conviction relief sought over one year later by the defendant. An appeal was prosecuted from the trial court's denial of post-conviction relief and this court dismissed the appeal as premature for the reason that the trial court failed to make separate findings of fact and conclusions of law as required by law. *State* v. *Warden* (Dec. 12, 1984), Guernsey App. No. 753, unreported.

Following the filing of findings of fact and conclusions of law, the cause is again before this court. Defendant-appellant assigns five errors:

"Assignment of Error No. I

"Appellant was denied the effective assistance of counsel and due process as his attorney represented conflicting interests and the trial court erred in denying appellant's petition for post-conviction relief.

"Assignment of Error No. II

"Appellant was denied effective assistance and due process due to trial counsel's failure to subpoena and effectively cross-examine and the trial court

erred in denying appellant's petition for post-conviction relief.

"Assignment of Error No. III

"Appellant was denied the effective assistance of counsel and due process when the lower court failed to make sufficient inquiry into the reasons surrounding counsel's motion to withdraw at the post-conviction hearing.

"Assignment of Error No. IV

"The findings of fact and conclusions of law filed by the trial court were inadequate and deny appellant meaningful review.

"Assignment of Error No. V

"The trial court erred to the prejudice of appellant in excluding exhibits two and four and testimony of appellant regarding information conveyed to him during trial by a police officer."

The charges and conviction arise out of a violent altercation between James Byrne, an adult probation officer employed by the Guernsey County Court of Common Pleas, and Frank Earl Warden, defendant-appellant, and Frank Warden's son, Tony Warden, at the Cambridge Holiday Inn. Joseph Warden, another son of appellant, was, at that time, facing charges of probation violation as the result of an altercation at a different tavern in Guernsey County.

Byrne was severely injured in the altercation suffering a fifteen-centimeter cut on the left side of his face to a depth of one inch and a cut on the right side of his face measuring twenty-five centimeters to a depth of one and one-half inches. He required one hundred eight sutures.

The nature of the wounds were consistent with the state's claim that they were inflicted by the appellant who had wielded a broken stem-type wine glass, which was found after the altercation in a trash barrel with victim-compatible type blood on the glass.

The defendant testified in his own behalf, and the evidence was in conflict on many issues. The state produced evidence that the defendant came to the victim's office the day before the altercation to discuss the situation concerning his son, Joseph, at which time he became belligerent, hostile, profane and abusive. The defendant denied being upset or angry.

At the Holiday Inn, defendant-appellant's son, Tony, first approached Byrne, followed by defendant-appellant. Byrne claimed the appellant became belligerent, struck him in the face, threw him to the floor, and then wrestled with him; as they released each other, appellant pounded Byrne's head on the floor and attempted to gouge his eyes while choking him. The fight continued and appellant picked up a wine glass, broke it, and struck Byrne in the face several times. Appellant denied that he started any argument with Byrne and claimed that Byrne started the fight and persisted. Appellant further claimed that he and his son disarmed Byrne and that Byrne continued to persist in the fight, as a result of which appellant threw Byrne to the floor where they wrestled on broken pieces of glass until the appellant recognized the cuts on Byrne's face. Appellant then released Byrne, and left the premises.

In addition to the charges noted against appellant, appellant's son, Tony, was also charged with felonious assault and intimidation arising out of the same incident. Attorney Allen Sherry was privately retained by appellant and his son to represent both of them.

Appellant moved pre-trial to consolidate his case with that of his son. The request was opposed by the state.

In support of the motion to consolidate, defense counsel argued that separate trials would not only waste time, but "would make it hard for us to

prepare a defense in the two separate cases because we would not know until the outcome of one whether we wanted to have the defendant — one defendant — testify on behalf of the other."

The state argued that the defendant-appellant was the principal offender and the son, an aider and abettor.

The consolidation motion was overruled and the appellant's case was first tried. During the trial of that case, although appellant testified, appellant's indicted son, also represented by Sherry, was not called as a witness.

## I

Appellant argues first that the possibility of conflict of interest was sufficiently apparent prior to trial to impose an affirmative duty upon the trial court to make further inquiry. He argues that the statements made by defense counsel at the consolidation motion hearing put the trial court on notice of potential conflict and imposed upon the court a duty to inquire further into the issue.

Neither the decision in *Glasser* v. *United States* (1942), 315 U.S. 60, nor *Holloway* v. *Arkansas* (1978), 435 U.S. 475, compel the conclusion postulated by the appellant. In *Glasser,* the defendant objected to court-appointed joint representation. In the case *sub judice,* there was no objection and counsel was privately retained. In *Holloway,* the attorney appointed to represent several co-defendants moved for appointment of separate counsel and the error was in the failure of the trial court to inquire into the circumstances surrounding the motion.

In the case *sub judice,* the filing of a motion to consolidate by the appellant does not put the trial court on notice of potential conflict and create any such duty as claimed by the appellant to make further inquiry upon the issue of potential conflict.

Where counsel is privately retained by each of two defendants charged as a result of the same incident, the court is not imbued with any duty to inquire upon the issue of conflict of interest when one of the defendants files a motion to consolidate the two cases for trial.

Appellant then argues that there was an actual conflict of interest adversely affecting appellant's attorney's performance at trial:

"In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler* v. *Sullivan* (1980), 446 U.S. 335, 348.

To support his allegation of conflict in fact, appellant argues:

"It is conceivable that Tony, the alleged aider and abettor, actually cut the victim. Through proper questioning a case could have been made to establish that perhaps it was Tony who cut Byrne during the gun struggle and Byrne even indicated to officers who arrived at the scene that Tony was the guilty party. This, however, would hurt Tony in his subsequent trial." Appellant's brief at 16.[1]

The claim that Tony could conceivably ("perhaps") cut Byrne is totally inconsistent with all of the evidence in the case, including the appellant's

---

[1] The referenced testimony is that given by the victim at the scene when first approached by police officers at a time when Tony Warden "was standing just a few feet away from me. * * *" (T. 94.) The question was asked of the victim, "and who did you indicate was involved?" and over objection, the answer was, "Tony Warden because he was the one that was standing right there then." *Id.*

own testimony. As pointed out by appellee:

"The appellant admitted, when subject to cross-examination at the petition hearing, that his son, Tony, and Junior Parsons (who testified for the defendant) were both in a position to see everything that happened during the fight. The only benefit to the appellant to be rendered by the testimony of his son, Tony, would only have been to corroborate the appellant's own testimony at trial and that of Junior Parsons. The appellant would now have us believe that, if only Tony had been called by Mr. Sherry to testify, that Tony would have possibly been blamed for slashing the face of the victim. Assuming arguendo that Tony Warden had been represented by a different attorney and had been called by Mr. Sherry as a witness for his father, that as stated by Mr. Sherry in his testimony at the petition [hearing] herein, he would have been compelled to assert his Fifth Amendment rights in any regard.

"In fact, given the above, the joint representation of both the appellant and his son, Tony, was a benefit to Tony without any prejudice whatsoever to the appellant's case." Appellee's brief at 15.

Upon the facts and circumstances of this case, we find no conflict of interest when privately retained counsel represents a father and son, both charged, in cases arising out of the same incident.

Attorney Allen Sherry testified at considerable length in the post-conviction hearing. He acknowledged that the defendant-appellant wanted Tony to testify during the trial of the case. Sherry, however, was concerned about the existing indictment against the son and talked to his client about it. Sherry concluded that "I don't know if I committed an error in judgment in not calling Tony. If I were retrying the case, I would call him." Sherry testified that he was not worried that Tony would incriminate his father, "but that he might say something damaging to himself, and I was representing him."

Sherry testified that his professional responsibility to Tony Warden interfered with his ability to call him in the trial of Frank Warden and concluded:

"A. As we discussed before in retrospect, you say you can see things you would do differently in almost any trial. I agree, I see that in this. I think the major error that might have been caused by our representation was the fact we represented Tony simultaneously with Frank. Until now, and I mean until after the trial, I didn't recognize the fact that there was probably a conflict."

*State* v. *Pariseau* (Feb. 28, 1985), Cuyahoga App. No. 48655, unreported, is of no comfort to the appellant. The court in that case simply held that petitioner was entitled to a hearing in a second post-conviction relief request where petitioner provided testimonial assertions of ineffective assistance of counsel. In the case *sub judice*, appellant got his hearing and substantial testimony was presented.

For the foregoing reasons, we overrule the first assignment of error.

## II

The second assignment of error is an accumulation of allegations of ineffective counsel that appellant argues amounts to a denial of a fair trial.

Appellant claims that counsel's performance was deficient because of substantial neglect of essential duties to his client, and that the client was prejudiced by such ineffectiveness. *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E. 2d 623; *Strickland* v. *Washington* (1984), 466 U.S. 668.

During the pre-trial preparation

and the trial, Sherry was assisted by co-counsel, James Peters.

With respect to the failure to call witnesses, we conclude that the testimony to have been offered would have been substantially corroborative and that counsel simply made a tactical decision which does not amount to a breach of duty to his client. The Sixth Amendment does not protect the petitioner from counsel's tactical failures. See, *e.g., Carrier* v. *Hutto* (C.A. 4, 1983), 724 F. 2d 396, 401, 403, *en banc* (1985), 754 F. 2d 520 certiorari granted *sub nom. Sielaff* v. *Carrier* (1985), 473 U.S. 903.

Privately retained counsel also decided not to follow the request of his client and questioned another witness for the state, a fellow probation officer, concerning alleged threats made to appellant by the probation officer. This tactical trial decision, and the merit thereof, are immediately apparent upon objective examination.

We have examined each of the other claims of the appellant, including the testimony concerning the glass, and find that they do not measure up to the standard established for relief upon the ground of ineffective assistance of counsel. *State* v. *Hester* (1976), 45 Ohio St. 2d 71, 74 O.O. 2d 156, 341 N.E. 2d 304; *State* v. *Lytle, supra.* See, also, *Strickland, supra,* at 687-697.

We overrule the second assignment of error.

### III

In the post-conviction proceeding, the court appointed counsel for the appellant. The day before the hearing, such counsel requested leave to withdraw stating that he and his client were in disagreement as to how the client should best be represented. The court overruled the motion stating, "it's difficult to represent a client that doesn't want you, but I'm not going to permit you to withdraw."

The complaint of the appellant was not directed at the effective assistance of counsel, but represented a desire that counsel be dismissed in order that he could be represented by another attorney. We find the trial court did not abuse its discretion in denying leave to withdraw in these proceedings, and that, upon an examination of the entire record of the lengthy hearing on the petition for post-conviction relief, it is clear that the appellant was competently and adequately represented by his appointed counsel.

The third assignment of error is overruled.

### IV

We find no prejudice in the failure of the trial court to articulate in greater detail its rationale for denying the post-conviction relief. This court has reviewed the entire transcript of the post-conviction hearing, together with the findings and judgment of the trial court, and is satisfied that the appellant was sufficiently aware of the trial court's rationale to prosecute a meaningful appellate review. *State* v. *Mapson* (1982), 1 Ohio St. 3d 217, 1 OBR 240, 438 N.E. 2d 910. See, also, *State, ex rel. Brown,* v. *Court* (1986), 23 Ohio St. 3d 46, 23 OBR 122, 491 N.E. 2d 303.

The fourth assignment of error is overruled.

### V

The allegations of exclusion of evidence during the trial are admitted by appellant to be directed to his "*Miranda* rights."

Such an error, if it does exist, is cognizable on direct appeal and barred by the doctrine of *res judicata. State* v. *Perry* (1967), 10 Ohio St. 2d 175, 178-179, 39 O.O. 2d 189, 191, 226 N.E. 2d 104, 107. Nothing in appellant's

reply brief alters our ruling on this assignment.

The fifth assignment of error is overruled.

The judgment of the Guernsey County Court of Common Pleas is affirmed.

*Judgment affirmed.*

PUTMAN, P.J., and WISE, J., concur.