OPINION
This case is before the court on a consolidated appeal from appellant's convictions in three cases following two trials before the common pleas court. For the sake of clarity, each trial will be discussed separately.
 I. APPEAL NOS. 74496 AND 74497
Common pleas court Case Nos. CR-347, 583 and CR-350, 551 were consolidated for trial. The indictments in these cases charged appellant with two counts of aggravated robbery with a firearms specification, felonious assault, possession of a dangerous ordnance, receipt of a stolen motor vehicle, failure to comply with an order or signal of a police officer, and possession of criminal tools. A jury trial resulted in appellant's conviction on all charges except felonious assault. Appellant was sentenced to concurrent terms of imprisonment totaling nine years, plus three years' imprisonment on the firearms specification.
In the three assignments of error relevant to these appeals, appellant contends:
 I. THE TRIAL COURT'S FAILURE TO INQUIRE OF THE APPELLANT'S REQUEST FOR NEW COUNSEL BEFORE THE TRIAL DENIED APPELLANT'S RIGHTS UNDER THE SIXTH
AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.
 II. THE EVIDENCE OF IDENTIFICATION IS INSUFFICIENT TO SUSTAIN THE APPELLANT'S CONVICTIONS.
 III. THE VERDICTS ARE AGAINST THE WEIGHT OF THE EVIDENCE.
For the following reasons, the court finds these assignments of error are meritless. Accordingly, the court affirms appellant's convictions.
 A. FACTS AND PROCEEDINGS
In common pleas court Case No. CR-347, 583, appellant was charged with possession of criminal tools, failure to comply with the order or signal of a police officer, and receiving a stolen motor vehicle; in Case No. CR-350, 551, he was charged with two counts of aggravated robbery with firearms specifications, felonious assault, receiving a stolen motor vehicle, and possession of a dangerous ordnance.
At separate arraignments held on March 13, 1997 and June 2, 1997, the court appointed John Moroney, Esq. to represent appellant. Mr. Moroney was given leave to withdraw as counsel in both cases, and on January 21, 1998, Mark Rudy, Esg. was appointed in his place. Mr. Rudy continued to represent appellant throughout the trial proceedings.
These cases were consolidated for trial on the state's motion; one of the receiving stolen property charges "was dismissed as duplicative.
At trial, Horace Mitchell testified that his 1984 Oldsmobile was taken from the parking lot of the Cleveland Clinic on December 17, 1996. Jonathan Lewis testified that he was at the Arabica coffee house on Coventry Road in Cleveland Heights with a friend, Heather Onutz, on December 22, 1996 at 11:00 p.m. They walked to a nearby indoor parking lot. As they approached Ms. Onutz's car, another car came toward them, skidded on the ice and stopped; two men emerged. The driver was an 18- to 22-year-old black male, of average build, dressed in black pants, a black jacket, and a black knit hat or hooded jacket. It was dark, so Lewis was not able to see his face. The driver threw Lewis to the ground and took his wallet. Lewis did not see what happened between Ms. Onutz and her assailant. The two men got back in the car and drove away. Lewis identified a photograph of Mitchell's automobile as the vehicle the men were driving.
Heather Onutz testified that the automobile skidded on the ice and struck her, knocking her to the ground. The two occupants of the vehicle got out, and the passenger approached her with a sawed-off shotgun. He was wearing a black hooded sweatshirt, black pants, and an orange scarf. He told her to give him her money. He grabbed her wallet and pulled it from her, breaking a chain which attached it to a belt loop and dumping the contents on the garage floor. A student identification card and video store card were taken, along with cash.
William Forrest, the police officer who apprehended appellant, and Forrest's partner, Chris Larson, testified that they observed an automobile with a license number that had been reported stolen. They called for assistance. When backup arrived, they pursued the vehicle onto Interstate 90 eastbound, at speeds of approximately ninety miles per hour. They observed an object being thrown from the vehicle; another officer retrieved the object, a shotgun.
The automobile left Interstate 90 at East 200th Street and proceeded up a railroad access road, finally stopping in a ditch. Two occupants fled. Officer Forrest pursued the driver, apprehending appellant under a vehicle in a garage. Appellant was dressed in a black hooded sweatshirt and black jeans. He had a screwdriver in his pocket. The steering column of the vehicle had been "peeled" so the ignition system was accessible without a key. Ms. Onutz' student ID and video card and an orange scarf were found in the car.
The jury returned verdicts finding appellant guilty of all charges except felonious assault. The court ordered a presentence report and discussed scheduling of other proceedings involving appellant. Appellant's mother then approached the court, resulting in the following exchange on the record:
 THE COURT: This is back to State of Ohio versus Cory Caldwell [sic.].
 Ms. Cardwell has approached the bench and said, Judge, when I came up and talked to you before trial began and told you that could my son have a new lawyer, was that on the record.
 And I told Ms. Cardwell, no, it is not on the record.
 And she said, well, he didn't have a chance to tell you, Judge, that he wanted a new lawyer. He raised his hand and you must not have seen it.
* * *
 Mr. Rudy [defense counsel], at anytime [sic.] since the 8th of January, when we called this matter out and talked about plea bargains and then started the trial, did Mr. Cardwell ask for a new lawyer?
MR. RUDY: No, your Honor.
* * *
 MS. CARDWELL: On the day when he was trying to get the Judge's attention, how come you didn't get the Judge's attention?
 MR. RUDY: It was an inappropriate time. I don't even remember that happening. But I asked the judge questions.
 THE COURT: Here is the thing. If you want — excuse me. That's not the right way to say it. If Cory Cardwell, who is the defendant — unfortunately you are, quote, only the mother. If Cory Cardwell wants a new lawyer for the rest of these cases, he needs to say so.
* * *
 MR. RUDY: I just had an opportunity to talk to Mr. Cardwell. He is indicating on his subsequent case, he would like to have different counsel.
 THE COURT: I will grant that request. We will appoint other counsel.
 B. LAW AND ANALYSIS 1. Right to Counsel
In his first assignment of error, appellant argues the trial court denied him his right to counsel under the Sixth andFourteenth Amendments to the United States Constitution by failing to inquire into appellant's request for new counsel before the trial began. The record does not show appellant requested new counsel before the trial began. The exchange on the record after trial shows that appellant's mother approached the court before trial about obtaining new counsel for her son. There is no evidence that appellant, himself, ever requested a new attorney.
Even if appellant had requested a new attorney, the court was not required to appoint one for him. The decision whether to appoint new counsel fell within the court's sound discretion.State v. Warden (1986), 33 Ohio App.3d 87, 91.
"[I]n order to discharge a court-appointed attorney, a defendant must show "a breakdown in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to effective assistance of counsel.'" State v. Byarse
(Sept. 4, 1997), Cuyahoga App. No. 70282, unreported (quotingState v. Coleman [1988], 37 Ohio St.3d 286, 292). There is no evidence of such a breakdown here. Lacking even a request for new counsel before trial in these cases, the court did not deny appellant his right to counsel under the Sixth andFourteenth Amendments. Also see State v. Henderson (May 15, 1997), Cuyahoga App. No. 70743, unreported.
Accordingly, the first assignment of error is overruled.
 2. Sufficiency of the Evidence
Appellant next argues there was insufficient evidence identifying him as the perpetrator to sustain his convictions. A court reviewing the sufficiency of the evidence must view all the evidence in the light most favorable to the state and determine whether any reasonable trier of fact could find the essential elements of the crime had been proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259. Sufficiency is a test of adequacy; that is, whether the evidence is legally sufficient to sustain the verdict as a matter of law. State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
Appellant does not question the adequacy of the evidence that the alleged crimes occurred; he simply argues that there was insufficient evidence identifying him as the perpetrator. Neither Onutz nor Lewis could identify the assailants; however, Lewis described his assailant's clothing: black pants, black jacket and a black hood. Onutz said her assailant was dressed in black and wore an orange scarf over his face. When appellant was arrested less than an hour after the attack, he was wearing black pants and a black hooded sweatshirt. An orange scarf was found in the automobile in which appellant was riding, along with the victims' property.[1] Police officers also recovered a gun that they saw being thrown from the passenger's side of the vehicle as they were pursuing it. This circumstantial evidence amply supported the conclusion that the appellant was one of the two assailants. Accordingly, the second assignment of error is overruled.
 3. Weight of the Evidence
Finally, appellant contends the verdicts contravene the manifest weight of the evidence. In evaluating the manifest weight of the evidence, this court must review the entire record, weigh the testimony and other evidence, and determine whether the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983), 20 Ohio App.3d 172,175 (cited with approval in State v. Thompkins [1977], 78 Ohio St.3d 380,387)
As in the second assignment of error, appellant challenges the evidence of identity, arguing that Officer Forrest lost sight of his suspect during the chase and only later found appellant in a garage under a car. As noted in footnote 1 above, Officer Forrest did not say he lost sight of the suspect; his partner, Officer Larson, testified that the chase "took a while," and he assumed Officer Forrest either lost sight of the suspect or "kept up with him and it took a while to find him." However, Officer Larson did not participate in the chase and did not know. This evidence is at best equivocal; it does not show that the jury clearly lost its way or created a manifest miscarriage of justice. Therefore, the third assignment of error is overruled.
 II. APPEAL NO. 74498
In common pleas court Case No. CR-354, 196, appellant was charged with two counts of kidnapping with firearms specifications, two counts of aggravated robbery with firearms specifications, grand theft, two counts of forgery, receiving a stolen motor vehicle, receiving stolen property, and escape.[2]
The kidnapping charges were dismissed. A jury trial resulted in appellant's conviction on both counts of aggravated robbery, grand theft, two counts of forgery, receiving stolen property, and escape. The jury found appellant not guilty of receiving a stolen motor vehicle. The court sentenced appellant to a net term of imprisonment of twenty-five years on all the charges.
Appellant presents four assignments of error relevant to these convictions:
 IV. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO GIVE THE CAUTIONARY INSTRUCTION MANDATED BY R.C. 2923.03 (D) AND COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST SUCH INSTRUCTION.
 V. THE EVIDENCE OF IDENTIFICATION IN THE AGGRAVATED ROBBERIES AND THE EVIDENCE OF THE OPERABILITY OF THE FIREARMS IS INSUFFICIENT TO SUSTAIN THE APPELLANT'S CONVICTIONS AND IS AGAINST THE WEIGHT OF THE EVIDENCE.
 VI. THE TRIAL COURT'S FAILURE TO MERGE COUNTS THREE AND FOUR IN THE PARKING GARAGE CASE PREJUDICED THE APPELLANT AND VIOLATED R.C. 2941.25.
 VII. THE TRIAL COURT VIOLATED THE SENTENCING PURPOSES, PRINCIPLES AND FACTORS CONTAINED IN 2929.11 [SIC.] AND 2929.12 AND THE APPELLANT'S SENTENCE MUST BE REDUCED OR A NEW SENTENCING HEARING MUST BE CONDUCTED.
For the following reasons, the court rejects these assignments of error and affirms the judgment against appellant.
 A. FACTS AND PROCEEDINGS
At trial, Caprice Jones testified that on August 12, 1997, appellant picked her up at home in a white Cadillac and drove with her to Mayfield Road and Euclid Avenue. Appellant left on foot and returned in a small brown car; someone else left with the Cadillac. Jones and appellant then went to Forest Hills Park, where appellant told Jones she was going to help him commit a robbery. Appellant instructed her about how to dress and supplied her with a stocking and kerchief to wear over her face.
They then drove to a parking garage at Mayfield and Lee Roads, where appellant entered an unlocked Jeep. He got out and approached a man and a woman who were getting into a car. Appellant pointed a gun at the man and took the couple's wallets, a purse and a briefcase. Appellant and Jones then got back in the brown car and drove away.
Appellant took Jones home. Twenty to thirty minutes later, he returned in the white Cadillac for her and two other women. The four of them went to Super K-Mart in Maple Heights and J.C. Penney's at Randall Park Mall and bought merchandise with credit cards they had stolen, including photographs of appellant and his son. They were stopped by store security officers at Penney's and turned over to North Randall police.
Brian Kvale testified that his car, a gray Buick Century, was taken from the parking lot at the Euclid Tavern on the afternoon the robbery took place. It was later returned to him by police. The steering column had been peeled.
The two victims, James Starr and Deborah Hoyer, testified that Starr was approached by a thin African-American man, approximately 5'10" to 6' tall, wearing a stocking over his head and a bandana over the lower part of his face. A female approached Hoyer. The man pointed a gun at Starr and told Starr to give him all his money. The robbers took Starr's wallet, keys, and Franklin Planner and Hoyer's purse and briefcase and left in a gray late model GM automobile.
 B. LAW AND ANALYSTS
1. Jury Instructions/Effective Assistance of Counsel
Appellant first argues that the court committed plain error when it failed to give a cautionary instruction concerning the testimony of an accomplice. "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "Plain error does not exist unless, but for the error, the outcome at trial would have been different." State v. Jenks
(1991), 61 Ohio St.3d 259, 282.
The trial court gave proper instructions on assessing the credibility of witnesses. Those instructions included a warning to consider the interest or bias of the witness. Appellant's counsel argued Jones' credibility. Significant other evidence supports appellant's conviction. Accordingly, the absence of a specific instruction regarding the testimony of an accomplice did not affect the outcome of the case. See, e.g., State v. Wilson
(July 31, 1998), Hamilton App. No. C-970397, unreported; State v.Resh (Dec. 11, 1992), Portage App. No. 90-P-2256, unreported.
The fourth assignment of error also contends appellant's trial counsel was ineffective because he failed to request a jury instruction regarding accomplice testimony. Appellant's brief, however, does not argue this contention; therefore, the court will disregard the issue. App.R. 12 (A) (2); 16 (A) (7)
 2. Sufficiency and Weight of the Evidence
Next, appellant claims the evidence of his identity and the evidence of the operability of the firearms is "insufficient to sustain the appellant's convictions and is against the weight of the evidence." The law regarding sufficiency and weight of the evidence is discussed above.
There was ample evidence to sustain appellant's conviction for aggravated robbery. Caprice Jones' testimony clearly outlined appellant's guilt. She testified appellant planned the robbery, stole the automobile used in the robbery, and drove to the parking garage where the robbery occurred. Appellant entered a Jeep and waited. They ran up to a man and woman entering an automobile. Appellant pointed a gun at the man; Jones approached the woman. They took wallets, a purse and a briefcase from the victims, then drove off in the stolen car. This evidence was sufficient for the jury to find appellant committed aggravated robbery in violation of R.C. 2911.01.
Appellant claims the evidence was insufficient to sustain his conviction for the firearms specification because there was no evidence as to the operability of the firearm. In determining whether a firearm is operable, "the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm." R.C. 2923.11 (A) (2). "[T]he trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph one of the syllabus. Here, although the firearm was never recovered, the evidence shows appellant pointed a gun at the victim and told him to "give [him] all [his] money." This implicit threat was sufficient to sustain a finding that the weapon was operable.
Appellant also argues the weight of the evidence concerning his identity as the robber and the operability of the firearms mandates a new trial. We disagree. Having reviewed the entire record, weighing the testimony and other evidence, the court cannot say the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed; therefore, the fifth assignment of error is overruled.
 3. Merger of Robbery Charges
In his sixth assignment of error, appellant claims the court should have merged the two robbery charges because appellant's conduct was "of such nature that he could not have committed one robbery without committing the other." Nonsense. Appellant and Ms. Jones robbed two separate victims. These are unquestionably independent crimes. State v. Hughley (1984), 20 Ohio App.3d 77. 80-81; also see Committee Comment to Am.Sub.H.B. 511 ("a thief who * * * steals different property from three separate victims in the space, say, of 5 minutes, can be charged with and convicted of all three thefts"). Therefore, the sixth assignment of error is overruled.
 4. Sentence
Finally, appellant argues his sentence was not "reasonably calculated to reflect the overriding principles" of felony sentencing and was not consistent with the sentence imposed on similar offenders for similar crimes, as required by R.C. 2929.11
(B). He also argues the court failed to consider the factors set forth in R.C. 2929.12 (B).
The trial court need not explicitly state that it considered the sentencing factors set forth in R.C. 2929.12. In fact,
 Nothing in the statute or the decision of th[e Ohio Supreme Court] imposes any duty on the trial court to set forth its reasoning. The burden is on the defendant to come forward with evidence to rebut the presumption that the trial court considered the sentencing criteria.
State v. Cyrus (1992), 63 Ohio St.3d 164, 166.
Appellant has presented no evidence to rebut the presumption that the trial court considered the sentencing criteria. The two aggravated robberies were first degree felonies, which carried maximum penalties of up to ten years' imprisonment. R.C. 2929.14. Appellant was sentenced to nine years' imprisonment on these counts. Thus, though appellant complains about the severity of the sentence, he did not receive the maximum penalty allowed by law; the court clearly did not consider that appellant had committed the worst form of the offense or posed the greatest likelihood of committing future crimes. See R.C. 2929.14 (C). However, the court did consider that appellant was "an exceedingly dangerous person, "predatory and manipulative," and "one of the most dangerous people that ever walked into [her] courtroom."
Absent evidence to rebut the presumption that the trial court considered the criteria set forth in R.C. 2929.12 (B), the seventh assignment of error must be overruled.
Accordingly, the trial court's judgments are affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and
PATRICIA A. BLACKMON, J., CONCUR
 ________________________ PRESIDING JUDGE KENNETH A. ROCCO
[1] Appellant argues that Officer Forrest lost sight of the person who ran from the automobile before Forrest found appellant. Apparently, appellant wishes to imply that he was not the person Officer Forrest had been chasing.
Appellant's counsel attempted to elicit testimony on this subject from Officer Larson; however, Officer Larson did not participate in the chase resulting in appellant's arrest and could only say his partner was gone a long time in pursuit. Forrest did not testify that he lost sight of appellant during the chase; consequently, the evidence does not support appellant's argument.
[2] Three other counts in the indictment charged co-defendants with receiving stolen property, theft, and forgery.