THE STATE OF OHIO, APPELLEE, *v.* LOVE, APPELLANT.

(No. C-870426—Decided June 8, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *L. Susan Laker* and *Steven M. Tolbert,* for appellee.

*Martin S. Pinales,* for appellant.

*Per Curiam.* Defendant-appellant James L. Love was charged in a three-count indictment with rape of a person under the age of thirteen by force or threat of force, gross sexual imposition and attempted rape. The charges were tried to a jury. At the close of the state's case, the trial court granted defendant's Crim. R. 29 motion for acquittal on the charge of gross sexual imposition. The remaining charges were submitted to the jury, which found defendant not guilty of attempted rape but guilty of rape. From the judgment on that verdict and the sentence, defendant has taken the instant appeal, in which he advances three assignments of error.

In the spring of 1986, the victim, who was then twelve years old, became acquainted with defendant when her mother and defendant began dating. The victim and her mother spent an increasing amount of time with defendant at his apartment, and the victim frequently stayed with defendant while her mother was at work. The victim testified at trial that, in mid-June 1986, defendant compelled her to submit to vaginal intercourse and that defendant's sexual assaults thereafter continued on a weekly basis throughout the summer. The charges against defendant arose out of two specific instances in this continuing course of conduct.

Defendant was charged with rape in connection with an alleged act of vaginal intercourse on August 26, 1986. At trial, the victim recounted that, on that date, her mother received a long-distance telephone call. The victim took the call at her home and then proceeded to a neighboring tavern to summon her mother. At defendant's suggestion, the victim accompanied defendant from the tavern to his apartment. The victim retired on the floor of the living room and later awoke to find defendant upon her.

The charges of gross sexual imposition and attempted rape arose in connection with circumstances sug-

gestive of attempted sexual conduct on September 7, 1986. On that date, the victim was left with defendant at his apartment while her mother went to work. The victim's mother returned to the apartment within five minutes of her departure, heard the victim scream, and knocked on the door. After some delay, defendant admitted the victim's mother to the apartment, where she found the victim, half-clad, with a necktie tied to her arm. She observed a second necktie tied to the frame of an open sofa bed in the living room. The victim's mother instructed her to dress and wait in the car. A physical altercation ensued between defendant and the victim's mother which culminated in defendant's departure from the apartment at knifepoint. The victim's mother then summoned the police.

When the police arrived at defendant's apartment, the victim and her mother were present, invited the officers inside and related to them what had occurred. From the vicinity of the open sofa bed, the officers retrieved a packet of spermicide suppositories and two neckties, one tied to the bed frame and one entangled in the sheets. The victim's mother then directed the officers to the bathroom closet, where they recovered a variety of items, including a small quantity of marijuana and an array of sexual devices. From a bookshelf in the living room, the officers recovered a knife.

Approximately one month later, the victim was examined by a physician. The physician found evidence "consistent with repeated blunt * * * penetrating trauma to the genital area," and ordered a pregnancy test. The test results were positive and showed that the victim was within the first trimester of pregnancy. The pregnancy was thereafter terminated by an abortion.

Defendant, in his first assignment of error, contends that the trial court erred in overruling his motion to suppress all evidence seized in the warrantless, nonconsensual search of his apartment. We find no merit to this contention.

Prior to trial, defendant formally moved for suppression of the items seized from his apartment on September 7. Following a hearing, the trial court granted the motion in part, suppressing the items recovered from the bathroom closet, but denied the motion with respect to the suppositories and neckties recovered from the area of the sofa bed and the knife recovered from the living-room bookcase.

We note initially that the evidence that the court declined to suppress, i.e., the suppositories, the neckties and the knife, were relevant only to the charges of attempted rape and gross sexual imposition of which defendant was ultimately acquitted. Thus, it may be said that there was no prejudice to defendant when the court admitted those items.

Assuming that some prejudice arose from that admission because the defendant was convicted of rape, we find that neither the initial entry of the officers into defendant's apartment nor their subsequent seizure of items in plain view offends Fourth Amendment principles. The officers proceeded to defendant's apartment in response to a radio report of a rape. When they arrived, the victim and her mother were in the apartment. Under the circumstances, the officers' entry into the single room of defendant's efficiency apartment was permissible upon a reasonable belief that the victim might be in need of immediate aid. See *Thompson* v. *Louisiana* (1984), 469 U.S. 17; *Mincey* v. *Arizona* (1978), 437 U.S. 385. Once they were lawfully inside the apartment, the officers were justified in seizing evidence of the

crime in plain view. See *Thompson, supra,* at 22; *State* v. *Hale* (Dec. 15, 1982), Hamilton App. No. C-810856, unreported. We, therefore, discern no error in the trial court's refusal to suppress the suppositories, the neckties or the knife and, accordingly, we overrule defendant's first assignment of error.

In his second assignment of error, defendant challenges the denial of his motion for mistrial, made following the closing arguments of counsel and based on allegedly improper and prejudicial remarks by the prosecutor in his summation on defendant's failure to testify or to present evidence in his own defense. The challenge is untenable.

In the initial portion of his closing argument, the prosecutor stated:

"Only 4 witnesses testified * * *. You didn't hear from [the victim's] uncle, for some reason the defense didn't call him. The boys in the neighborhood weren't called. Where are they if they are involved in this? They weren't here. No reason to call them, State has to prove the case, I will concede that, defense doesn't have to call those witnesses but they could have if there was something there, if it was more than just smoke to get you to start thinking over here whether the facts are here."

The trial court overruled defense counsel's objection to the remarks, noting that the prosecutor had qualified the statement, but then reminded the jury that the state bears the burden of proving the defendant's guilt and that the defense is under no obligation to prove otherwise.

We find that, in the context in which it was made, the prosecutor's comment on defendant's failure to call witnesses was sufficiently qualified by his acknowledgement of the state's burden, and that any residual prejudicial effect was cured by the court's admonition. In addition, the comment

was invited by defense counsel's attempts to elicit on cross-examination of the victim and her mother a concession that the victim's pregnancy may have resulted from sexual contact with an uncle to whom the victim was especially close or with one of a group of neighborhood boys who allegedly assaulted the victim in May 1986. See *State* v. *Carter* (Feb. 13, 1985), Hamilton App. No. C-830908, unreported.

Defendant also objected to the prosecutor's statement that:

"You have heard absolutely nothing which refutes the facts the State has put on. Nothing which casts on the credibility of any State witness in [*sic*] any kind of doubt whatsoever."

The objection to this statement was duly noted for the record, but the court made no ruling. We find that the prosecutor's statement to the effect that the state's evidence was uncontroverted constituted a permissible comment on the strength of the state's case rather than an improper comment on defendant's silence. See *United States* v. *Robinson* (1988), 485 U.S. 25, 99 L. Ed. 2d 23, 108 S. Ct. 864; *State* v. *Poindexter* (1988), 36 Ohio St. 3d 1, 4-5, 520 N.E. 2d 568, 571-572.

Finally the prosecutor, in rebuttal to defense counsel's closing argument, stated:

"[T]he Government could have done a lot of things they didn't do. Well, what? You know the girl was taken to the hospital and available medical evidence was retrieved * * *. What more could the Government have done? I guess it is to be implied that some sort of paternity test could have been done here, the tissue testing that they are talking about can be used to indicate who the possible father [*sic*] and who is not * * *. The doctor says yes, tissue samples could have been taken from an aborted fetus, but you know the problem is and again you go

back to the same thing the defense doesn't have to do anything. We need his cooperation in all this. He did not, I am not saying he has to but he never came forward and volunteered to give any blood test or anything."

Defense counsel's objection to the remark was sustained, and the jury was instructed to disregard the statement.

As a general rule, a conviction will not be reversed on the basis of improper comment on the evidence by the prosecutor in argument when an objection is sustained and the jury is adequately admonished to disregard the comment. See *State* v. *Wilson* (1972), 30 Ohio St. 2d 199, 50 O.O. 2d 220, 287 N.E. 2d 632. We further find that the prosecutor's comment on the matter of tissue testing for a determination of paternity was invited by defense counsel's initiation and pursuit of the issue on cross-examination of the physician who examined the victim. See *State* v. *Carter, supra.*

Upon our determination that none of the comments of the prosecutor in the course of closing argument warranted the declaration of a mistrial, we overrule defendant's second assignment of error.

In his third and final assignment of error, defendant assails the trial court's denial of his Crim. R. 29 motion for acquittal on the charge of rape and the balance struck by the jury in weighing the evidence before it. This challange is feckless.

Defendant argues in support of this remonstration that the victim's testimony to the August 26 rape was uncorroborated. In *State* v. *Gingell* (1982), 7 Ohio App. 3d 364, 7 OBR 464, 455 N.E. 2d 1066, we found no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction. With respect to the denial of defendant's Crim. R. 29 motion, we find that the trial court correctly determined that reasonable minds could have reached different conclusions as to whether each material element of the crime of rape had been proven beyond a reasonable doubt. We, therefore, determine that the court properly overruled the motion. See *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261, 9 O.O. 3d 401, 381 N.E. 2d 184.

Turning to defendant's challenge to the weight of the evidence to support his conviction, we find nothing in the record of the proceedings below to suggest that the jury, in resolving the conflicts in the evidence, lost its way or created such a manifest miscarriage of justice to warrant a reversal of defendant's conviction. See *Tibbs* v. *Florida* (1982), 457 U.S. 31; *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717. We, therefore, overrule defendant's third assignment of error.

The judgment is affirmed.

*Judgment affirmed.*

SHANNON, P.J., BLACK and KLUSMEIER, JJ., concur.