Defendant-appellant Tierre Clay ("defendant") appeals the decision of the juvenile court finding him guilty of rape, a felony of the first degree, in violation of R.C. 2907.02 (A) (2).
A complaint was filed in Cuyahoga County, Common Pleas Court, Juvenile division, charging defendant with unlawfully engaging in sexual conduct with another ("victim"), age z, on or about December, 1996. The matter proceeded to trial on January 27, 1998.
A review of the transcript reveals the victim was the first witness to testify. The victim stated he was a resident at the Jones Home and shared a room with defendant. He testified that on the night in question, defendant went up to their room to go bed and he followed a few minutes later. The victim said defendant asked him to play poker and they played a game. Defendant won the game and asked the victim to remove his shirt. The victim stated he said "no" and went to bed. It was at this point, that defendant approached the victim. The victim testified defendant started pulling him by the arm off his bed. He stated defendant was a little stronger than he, so defendant dragged him to the side of the bed where he was standing. Next, the victim testified the following occurred:
 "A. And he — and he told me to get down on my knees and start sucking, sucking his penis, and I was like no. And he was like do it, I was like no, and then he was like — the third time, he was like you better suck my penis before I — before I whoop your ass. His exact words was, I will whoop your ass if you don-'t do it.
Q. So what happened next.
 A. And so I — I was just scared, so I got down on my knees, and then I started sucking his penis, and then he was like — he didn't say nothing, and then after I was done that, he was like stand up. And so I stood up and I went to go back onto my bed and he grabbed me, and he was like — he just grabbed me and he turned me around, and he put his hand on my back and he pushed me down on his bed. And then — and
Q. Now were your pants on at this point?
 A. Yes, and then after he pulled — after he — they were still on and then when after he bent me over, he pulled them down. And then he spread my legs open a little bit, and then he just tried to stick his penis in my buttocks, and so I just started squeezing my cheeks, my butt cheeks closed, and he got his penis between my legs.
Q. Did he actually put his penis inside you buttocks?
A. No."
The victim stated he was softly pleading "no, no, no" when the hall monitor came into the room and defendant asked the monitor for permission to go to the bathroom. The monitor said yes. The victim stated he told the monitor "nothing was going on" because he was afraid defendant would beat him up. After the monitor left the room, defendant returned and the victim stated he saw defendant carrying a cup in his robe and saw him place the cup on a dresser. The victim said the cup was filled with soapy water. The victim and defendant were then ordered by the monitor to go downstairs and see one of the counselors. The victim stated he did not tell this counselor what happened either because he was scared.
 Upon returning to the room, the victim testified defendant:
 "* * * came over to me, and he pulled the covers off before I was getting ready to get into bed, he grabbed me by my arm, and before I was getting ready to hop into bed he came over and grabbed me, and then he did the same thing. He bent me over his bed, and then he pulled my pants down and pulled his pants down again and then he put soap on it, on his penis."
On cross-examination, the victim stated he was alone in the room with the hall monitor and he knew if he complained to the hall monitor he would be removed from the room. However, the victim said he never informed the monitor of what occurred because he was scared he would get beaten up and afraid he would get in trouble. The victim testified he saw defendant put soap on his penis but still did not yell or scream for anybody. Even though he admitted the monitor would have heard him if he yelled. The victim also said he did not tell the counselor what was going on because he "was — like I just said, I was scared. I wasn't thinking about — about that, going to tell him." Lastly, the victim stated defendant teased him about why he was in the home.
The only other witness to testify was defendant. Before he testified, he was informed by the trial court that he did not have to testify pursuant to the Fifth Amendment. Nonetheless, defendant still testified. Defendant stated he was playing a game called "tonk" with the victim when the hall monitor came in the room. He stated the victim was yelling "no, no" because he thought defendant had cheated him. Defendant denied taking a cup to the bathroom and he denied asking the victim to have sex with him. However, he did admit he teased the victim.
After hearing both the victim and defendant testify, the trial court moved to disposition. The trial court found defendant guilty of rape, stating:
 "* * * I'm going to find Tierre Clay to be delinquent as charged in the count against [the victim] by both force and threat of force. Tierre you have a right to appeal my decision to the Eighth District Court of Appeals.* * *"
Defendant timely filed his notice of appeal and presents four assignments of error. His first assignment of error states as follows:
 DEFENDANT-APPELLANT'S CONVICTIONS WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant argues the only evidence that connected him to any sexual conduct was the testimony of the victim. Defendant claims this testimony was open to different interpretations and is not the type of evidence, standing alone, upon which to base a conviction. He maintains the victim's testimony, while true in some instances, was subjective and false in other instances. Plus, he argues there was no physical evidence or medical corroboration to support the victim's testimony. Neither the hall monitor nor the counselor was called to testify and the alleged soapy cup, bedding, and clothing of the parties were not introduced at trial. Defendant claims the victim's testimony was self-serving and in fact the victim was sent to the home for sexual activity against a minor which is the same conduct complained about here. Lastly, defendant submits there is not a scintilla of evidence that rape had taken place.
The state counter-argues defendant incorrectly used the victim's juvenile record for impeachment purposes, per R.C.2151.358 (H), and thus we must disregard this portion of his argument. The state maintains there was consistent, credible evidence to satisfy all the elements of rape. It argues the testimony of the victim was the only evidence which could properly relate what occurred on the night in question. This included the victim being forced to perform oral sex on defendant, the victim having his pants pulled down by defendant, and defendant using threats to force the oral sex when defendant said "I will whoop your ass if you don't do it." The victim's testimony, the state claims, also reveals the victim objected to the forced sex and only performed the sex act because he was scared and defendant was bigger than he was. The state concludes by stating the trier of fact heard the testimony of the victim and defendant, was able to judge the credibility of each party, and did not lose its way by finding defendant guilty.
It is well-settled law that a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. State v.Seiber (1990), 56 Ohio St.3d 4, 13. Moreover, on reviewing a claim that a conviction is against the manifest weight of the evidence, said conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995),103 Ohio App.3d 368, 370
Defendant was charged with rape, a violation of R.C. 2907.02
(A) (2), which reads as follows:
 "(A) (2) No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."
The record indicates the only evidence presented to the trial court was the testimony of both the victim and defendant. The victim described in detail the events of the night in question. He testified about how defendant dragged him off his bed, forced him down on his knees, threatened him with physical abuse if he did not perform the sex act, and finally how he had to perform oral sex on defendant. The victim explained further how defendant grabbed him a second time, pulled his pants down, and attempted to have anal sex with him. Then after not succeeding, defendant went and retrieved a cup of soapy water to apply to his penis for a second attempt at anal sex. The trial court also heard defendant's testimony. Defendant denied the sexual allegations and stated the victim was angry because he believed defendant was cheating him while the two played cards. Defendant also stated he had teased the victim about his reason for being placed in the juvenile home.
Defendant argues much of the victim's testimony was uncorroborated and therefore the elements of rape were not satisfied. This same argument was presented in two similar cases involving the rape of a minor. State v. Love (1988). 49 Ohio App.3d 88
and State v. Gingell (1982), 7 Ohio App.3d 364. In both cases the courts held there exists no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction. Love at 91; Gingell at 365. Regarding defendant's argument that the victim's testimony was subjective and false in some instances, it is well-known the credibility of the witnesses is within the province of the trier of fact. State v. DeHass (1967), z Ohio St.2d 230.
Based on the foregoing, we find the trier of fact had substantial evidence in the form of the victim's testimony upon which it could reasonably conclude that all the essential elements of rape were proven beyond a reasonable doubt. Therefore, a manifest miscarriage of justice was not created mandating a reversal. Defendant's first assignment of error is overruled.
 Defendant's second assignment of error states as follows:
 THE COURT ERRED BY THE CONSIDERATION OF HEARSAY NOT ADMITTED INTO EVIDENCE WHICH MATERIALLY AFFECTED DEFENDANT-APPELLANT'S RIGHT TO A FAIR AND UNPREJUDICED TRIAL.
Defendant argues the trial court erred in considering improper evidence. Specifically, he complains the trial court relied on a clinical evaluation which was not placed in evidence; the psychologist who prepared the evaluation did not appear at court to testify about it; and the evaluation was not made available to counsel prior to trial. Defendant also contends the trial court erroneously relied on the following hearsay, prejudicial evidence: (1) clinical and psychological evaluations, (2) hearsay counselor testimony, and (3) prior probationary reports not involving this case. As a result of the cumulative effect of these errors, defendant claims he was denied a fair trial because this evidence had no nexus to the rape charge and it was not available for cross-examination.
The state counter-argues there was nothing in the evaluation prejudicial to defendant because the evaluation mirrored defendant's testimony at trial. The state also argues that in a bench trial in a criminal case it is presumed the court only considers relevant, competent evidence.
Initially we note defendant failed to object to the admission of the hearsay evidence he now complains of and also failed to object to the trial court's reference to defendant's psychological evaluation in its disposition. A litigant's failure to raise an issue in the trial court waives the litigant's right to raise that issue on appeal. Inscoe v. Inscoe (1997), 121 Ohio App.3d 396. Because defendant failed to object at trial to these alleged errors, he now waives these issues on appeal absent a violation of a substantial right. Id. at 421; see also Civ.R. 61.
The trial court referred to the psychological evaluation in its decision when it stated:
 "Tierre, stand up. Brian. Tierre, I found you to be a delinquent child. There is no doubt in my mind that this took place exactly the way that that young man said it did. I'm looking at your psychologicals. I have had the opportunity to thoroughly review the statements and the evidence. There is no doubt in my mind that you are on this date was a sexual predator, and not once, not twice, but three times."
It is true the trial court referred to the psychological evaluation in its disposition. However, from the preceding relevant portion of the transcript it is clear the trial court did not make any substantive findings regarding the evaluation but only a minimal recognition that it reviewed the evaluation. The trial court clearly stated that it reviewed the statements and the evidence when it made its decision regarding defendant's guilt. Plus, defendant does not demonstrate how the trial court's referral to the evaluation prejudiced him or would have changed the outcome of the trial if he had prior access to the evaluation. Moreover, pursuant to the first assignment of error, the record reveals there was enough evidence based solely on the testimony adduced at trial to satisfy all the elements of rape.
Defendant also argues the trial court erroneously relied on hearsay testimony; i.e, the victim's testimony regarding the hall monitor and counselor, clinical/psychological evaluations, and prior probationary reports.
First, defendant does not indicate in his brief or present to this court testimony or evidence concerning prior probationary reports and/or clinical/psychological evaluations. Second, the trial court mentioned in its opinion that it reviewed a psychological report, but this report is not in the record. Thus, defendant's allegation is unsupported and we are unable to review this argument.
Second, the victim's testimony concerning statements made by the hall monitor and counselor was clearly hearsay and not admissible. However, defendant did not object at trial and there is no evidence a substantial right of defendant was violated by the admission of such testimony. Moreover, the trial court did not refer to this testimony in its entry. Also, where a trial judge acts as the fact finder, a reviewing court will be slow to overturn an adjudication on the basis of the admission of inadmissible testimony, unless it appears that the court below actually considered such testimony in arriving at its judgment, as the trial judge is presumed capable of disregarding improper testimony. In re Sims (1983), 13 Ohio App.3d 37.
We find neither the trial court's referral to the psychological evaluation nor the admission of the hearsay testimony contributed to defendant's adjudication of delinquency for rape, therefore any error was harmless beyond a reasonable doubt. See also In re Johnson (1989), 61 Ohio App.3d 544. In addition, defendant did not demonstrate prejudicial error or that the alleged errors violated his substantial rights. Accordingly, defendant's second assignment of error is overruled.
 In his third assignment of error defendant states as follows:
 DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION z OF THE OHIO CONSTITUTION.
Defendant argues he was denied effective assistance of counsel because defense counsel failed: (1) to call witnesses such as the hall monitor and the counselor to impeach the credibility of the victim, (2) to vigorously cross-examine the victim, (3) to produce inconsistent statements made by the victim, (4) to submit certified copies of judgment entries showing the victim was delinquent due to his raping another minor and thus he had knowledge of the sexual acts he now complains of, (5) to raise any objections to hearsay testimony and speculation referred to by victim while testifying, and (6) to present evidence such as hospital medical records which would materially challenge the victim's credibility.
To prevail on a claim of ineffective assistance of counsel, a defendant must show both deficient performance and resultingprejudice. Strickland v. Washington (1984), 466 U.S. 668. Under the performance inquiry, this court must determine, considering all of the circumstances, whether "counsel's representation fell below an objective standard of reasonableness." State v. Campbell
(1994), 69 Ohio St.3d 38, 43. Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Id. The prejudice inquiry involves a determination of "whether there is a reasonable probability that, absent the errors, the fact finder would have" acquitted the defendant. Strickland at 694. Lastly, the defendant bears the burden of proving trial counsel's ineffectiveness, since in Ohio a properly licensed attorney is presumed competent.Vaughn v. Maxwell (1965), 2 Ohio St.2d 299.
First, defendant complains defense counsel failed to call the hall monitor and counselor to impeach the credibility of the victim and corroborate his innocence. Defendant does not explain how either of these potential witnesses' testimony would have exculpated him or impeached the victim. In fact, a review of the transcript indicates neither the hall monitor nor the counselor witnessed the sexual act or had knowledge it occurred on the night in question. Both of these potential witnesses played only a minor role in the events that transpired. Moreover, any testimony they would have offered would have been substantially corroborative. Plus, the failure to call witnesses is a tactical decision and the Sixth Amendment does not protect a complaining defendant from counsel's tactical failures. State v. Warden
(1987), 33 Ohio App.3d 87.
Second, defendant claims defense counsel failed to vigorously cross-examine the victim regarding his age, school level, description, size, weight, or reason for confinement. He argues these facts are essential and would have established the victim had prior and independent knowledge of sexual acts which is critical because there was no physical evidence of abuse. The essence of defendant's argument is establishing the victim had knowledge of the very sexual acts he was subjected to. The victim's age and physical characteristics would not have established this knowledge. The only cross-examination that would have established this knowledge would have been questions concerning the victim's own sexual past which consisted of his being committed to the Jones Home for delinquent sexual acts. However, pursuant to R.C. 2151.358 (H) a juvenile court delinquency adjudication cannot be used to impeach the general credibility of the witness. Therefore, any cross-examination by defense counsel regarding the victim's past delinquencies would have been improper.
Third, defendant argues the victim stated he told the hall monitor and counselor that nothing happened, yet the victim was later transported to the hospital for a medical examination for sexual abuse. Therefore, defendant reasons the victim had to have changed his story in order to have undergone a medical examination. We cannot address this argument because defendant is arguing facts which are not in the record. As a result, we can neither substantiate nor deny defendant's claims because there are no facts or evidence upon which to base a decision.
Fourth, defendant argues defense counsel failed "to produce evidence of [the victim's] prior sexual conduct and delinquencies." Pursuant to R.C. 2151.358 (H) a juvenile's past juvenile adjudications cannot be used as impeachment against him.
Fifth and sixth, defendant argues defense counsel failed to object to the hearsay testimony and speculation the victim testified about. And defense counsel failed to present evidence, such as hospital records, which would have materially challenged the credibility of the victim. In United States v. Teague (1992).953 F.2d 1525, 1531, the Eleventh Circuit Court of Appeals concluded that counsel has the ultimate authority to decide issues concerning what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pretrial motions should be filed. The Court called these decisions "non-fundamental" and found that they should not be second-guessed because they are considered trial strategy.
A review of the record supports defendant's claim that defense counsel did not object to obvious hearsay testimony and did not submit hospital records that may have been exculpatory. The record indicates defense counsel's strategy was to undermine the victim's credibility by showing he had two easy opportunities to terminate his contact with defendant but chose not to do so. While this strategy may not have been the most effective in hindsight, defense counsel's representation did not fall below an objective standard of reasonableness because he pursued it as a strategy. Plus, an attorney's judgment need not necessarily be right, as long as it is reasonable. See Strickland,466 U.S. at 687-691. We find defense counsel's representation of defendant was both reasonable and nonprejudicial to defendant. Accordingly, defendant's third assignment of error is overruled.
 Defendant's fourth assignment of error states as follows:
 THE TRIAL COURT ABUSED ITS DISCRETION BY INDICATING A PRECONCEIVED PREDISPOSITION REGARDING GUILT AND SENTENCE BY MAKING EVIDENTIARY AND OTHER RULINGS WHICH SERVED TO DENY THE DEFENDANT-APPELLANT HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL.
Defendant argues the trial court had a preconceived disposition towards finding him guilty before rendering a judgment. He bases this claim on several remarks the trial court made on the record. The first remark defendant complains of was when the trial court called him a "sexual predator." The second remark defendant complains of was when the trial court referred to the indictment and stated "the idiot who filed the paper didn't make three different rapes." The third instance of judicial bias defendant complains of concerns the following exchange between him and the trial court:
"MASTER CLAY: I want to test —
 THE COURT: You should also know that I have read the psychological evaluation, which speaks to the stories that you told to the clinicians about the incident.
 THE COURT: Okay Tierre, you know that you don't have to testify based on what your attorney just said to me and what I've told you. Do you understand that?
MASTER CLAY: Yes, sir.
THE COURT: And you still want to testify?
MASTER CLAY: Yes sir.
 THE COURT: You understand that right now, there is a story that's out there. If you want to put another story out there, or correct it, or make any sort of change in it, that's of course your right to do so. But it's also your right not to do it. So what do you want to do?
MASTER CLAY: I want to testify."
Defendant maintains this colloquy was a subtle form of intimidation and a clear indication that the judge had a preconception of prejudice against him and any testimony he gave.
The state counter-argues defendant "puts a sinister spin" on the exchange that occurred between he and the trial court. The state claims a more rational explanation is that the trial court was attempting to explain the Fifth Amendment right against selfincrimination to a naive seventeen-year-old juvenile.
What a judge learns in his judicial capacity, whether from pretrial proceedings, co-defendant pleas, or evidence presented in a prior case, is properly considered as judicial observations and creates no personal bias requiring recusal. In re Daniel E. (1997), 122 Ohio App.3d 139, citing Code of Judicial Conduct, Canon 3.
In State v. Girts (1997), 121 Ohio App.3d 539, 562, citingState v. Wade (1978), 53 Ohio St.2d 182, 188, this court considered a claim of judicial bias and stated "challenged statements and actions of the trial judge in a criminal case will not justify a reversal of the conviction, where the defendant has failed in light of the circumstances under which the incidents occurred to demonstrate prejudice." The court went on to list four factors to be used in determining whether a trial judge's remarks were prejudicial: (1) defendant has the burden of proof to demonstrate prejudice; (2) it is presumed that the trial judge is in the best position to determine when a breach is committed and what corrective measures are called for; (3) the remarks are to be considered in light of the circumstance under which they were made; (4) the effect of the remarks have on the jury are to be considered; and (5) the possible effect of the remarks on the effectiveness of counsel is to be examined. Id. at 562.
Defendant has not met his burden of showing how the remarksprejudiced him. An aggregate review of the transcript indicates the state's characterization of the trial court's remarks to defendant is correct. The trial court was merely trying to explain a constitutional right to a juvenile witness. Regarding the sexual predator remark and the remark about the person who filed the indictment, they do not, standing alone, indicate any bias by the trial court. As a result defendant's fourth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Juvenile Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J.
JAMES D. SWEENEY, J., CONCUR.
_______________________ JOHN T. PATTON PRESIDING JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22 (B) 22 (D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22 (E) unless a motion for reconsideration with supporting brief, per App.R. 26 (A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22 (E). See, also, S.Ct.Prac.R. II, Section 2 (A) (1)