[Cite as *State v. Leonard*, 2013-Ohio-1446.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98626**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTHONY LEONARD

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-554061

**BEFORE:** Jones, P.J., S. Gallagher, J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 11, 2013

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY: Cullen Sweeney
       John Martin
Assistant Public Defenders
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Kevin R. Filiatraut
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant, Anthony Leonard, appeals his convictions for rape, attempted rape, and kidnapping. We affirm.

{¶2} In 2011, Leonard was charged in a five-count indictment with two counts of rape, two counts of kidnapping, and one count of attempted rape; each count contained a sexually violent predator specification. The state alleged that the incident occurred in April 1998.

{¶3} In May 2012, the matter proceeded to a jury trial; Leonard waived his right to a jury trial on the sexually violent predator specifications. The following pertinent facts were adduced at trial.

{¶4} "R.M."[1] testified that when he was nine years old he lived with his mother in the area of East 40th Street and Quincy Avenue in Cleveland. As R.M. remembers, on the day in question he was walking from his friend's house to his grandmother's house. When he discovered that his grandmother was not home, he began to cross East 40th Street to walk back to the friend's house. A white Cadillac pulled up and a man got out and snatched R.M., forcing him into the back seat of the car. The man told R.M. not to move. R.M. tried to get out of the car but he was unable to open the back door. The man told R.M. that "if he wanted this to go cool he would keep quiet and keep his head down."

{¶5} The man drove around for approximately ten minutes before stopping at a

---

[1] The victim in this case is identified by his initials in accordance with this court's policy.

park. The man then got into the back seat, took off R.M.'s clothes, and "stuck his finger in [R.M.'s] butt." Then the man put his penis in R.M.'s buttocks and forced R.M. to perform oral sex on him. R.M. gagged, and the man got mad. The man then "peed"[2] on R.M. and forced R.M. to perform oral sex again. R.M. vomited, and the man pushed R.M. out of his car. R.M. did not have any clothes on.

{¶6} R.M. testified that he did not get a good look at his attacker because the man kept telling him to put his head down. He described his attacker as a dark-skinned black man who was the same height as R.M. at the time of trial.

{¶7} R.M. testified that he remembered the car had a red- or burgundy-colored interior and there was a water bottle on the floor. After the man pushed R.M. out of the car, R.M. started screaming. An elderly woman assisted him, giving him a blanket while they waited for the police to arrive.

{¶8} R.M.'s mother testified that on the day her son was attacked, she had told him to take out the trash but when he did not return, she called the Cleveland Police and went out looking for him. A couple of hours later, the police came to her apartment and informed her they found R.M. a few blocks away, naked. R.M. was crying and initially refused to talk about what had happened. Eventually, R.M. told his mother, "he peed on me. He peed on me. He tried to make me kiss him. He tried to make me touch him."

{¶9} Tracy Douglas, who worked as a nurse at the former Mount Sinai Medical

---

[2] R.M. testified that he did not know what semen was at the time of the attack, and could not remember if he had meant that the man had ejaculated on him.

Center, testified that she examined R.M. on that day. The young boy was brought to the hospital by the police. R.M. reported he had been raped by a stranger. Douglas testified that, as part of her examination, she took swabs from inside R.M.'s mouth and around the edge of his anus. After the examination, Douglas released the rape kit to law enforcement. Detective Curtis Palmer testified that he collected the rape kit from Mt. Sinai and entered it into the Cleveland Police Property room.

{¶10} Detective Karl Lessman was assigned to the case. He remembered that R.M.'s mother did not want to pursue the case because her son was so distraught. Det. Lessman was able to develop a vague description of the perpetrator and his car, but was unable to find any suspects. The case then went cold.

{¶11} Christopher Smith, an analyst with the Ohio Bureau of Criminal Investigation ("BCI"), testified that in March 2006 he analyzed the rape kit after receiving it from the Cleveland Police Department. He located the presence of semen in the oral swabs and trace amounts of semen in the anal swabs. At that time, neither the police nor BCI had Leonard's DNA.

{¶12} BCI then forwarded the rape kit to a lab in Virginia for further testing on the samples to develop a DNA profile. In July 2006, the Virginia lab finished its testing, forwarded its results to BCI, and entered the DNA profile into a national computer database. In October 2006, a detective with the Cleveland Police was notified by BCI that the database had matched Leonard's DNA profile to the case.

{¶13} In August 2011, Detective Lessman was notified of the match. He was

able to locate and interview Leonard. He asked Leonard if he had ever owned a white Cadillac, and Leonard said his wife had owned such a car. Leonard was arrested. Detective Lessman testified that when he told Leonard about the DNA match, Leonard replied "DNA doesn't lie and if it was [my] DNA in the rape kit, then [I] must have done it." Detective Lessman obtained Leonard's consent, took a swab from inside his mouth, and sent it to BCI for further DNA analysis.

{¶14} Kelly Ress, a DNA analyst for BCI, testified that she received a sample of Leonard's DNA from the Cleveland Police in September 2011, tested the sample, and developed his DNA profile. BCI issued a new report finding that the August 2011 DNA sample from Leonard matched the DNA in the rape kit. In 2012, BCI again tested the samples and found that Leonard could not be excluded as the source of the semen found from the oral swabs.

{¶15} Leonard's wife, Elizabeth Leonard, testified she owned a white Cadillac in 1998 that her husband drove, but it was a two-door with white interior. Ashley Leonard, Leonard's stepdaughter, and Rasheem Ellis, a family friend, both testified that Leonard had always behaved appropriately around them and that they trusted him around their respective children.

{¶16} The jury convicted Leonard of three counts: Count 2, rape, in violation of R.C. 2907.02(A)(1)(B) and furthermore found that he had purposely compelled the victim to submit by force or threat of force; Count 3, attempted rape, in violation of R.C. 2907.02(A)(1)(B) and 2923.02; and Count 4, kidnapping with a sexual motivation

specification, in violation of R.C. 2905.01(A)(4). The trial court held a hearing at which the state conceded that it could not prove the sexually violent predator specifications and the court dismissed the specifications. The court then classified Leonard as a sexually oriented offender and sentenced him to life in prison for rape, three-to-eight years for attempted rape, and four-to-eight years for kidnapping.

{¶17} Leonard filed a timely notice of appeal and raises three assignments of error for our review:

[I]. Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Sec. 10, Art. 1 of the Ohio Constitution, because counsel failed to file a motion to dismiss for pre-indictment delay, and failed to ensure that the jury was properly and fully instructed on the elements of rape.

[II.] The trial court plainly erred when it instructed the jury on count two that anal rape only required penetration of the anal "opening" and not the anal "cavity."

[III.] The conviction for anal rape is against the manifest weight of the evidence.

Ineffective Assistance of Trial Counsel

{¶18} In the first assignment of error, Leonard claims he was denied effective assistance of counsel.

{¶19} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant

demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶20} In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id.* at 689. Trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶21} Leonard's claim is two-fold. He claims that his counsel was ineffective because the attorney failed to (1) file a motion to dismiss for pre-indictment delay and (2) make sure the jury was properly instructed. Leonard's claim with regard to the jury instructions will be discussed as part of the second assignment of error.

### Pre-Indictment Delay

{¶22} The Ohio Supreme Court has concluded that the delay between the commission of an offense and an indictment, can, under certain circumstances, constitute a violation of due process of law guaranteed by the federal and state constitutions. *See State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus; *State v. Henley*, 8th Dist. No. 86591, 2006-Ohio-2728.

{¶23} The statute of limitations governing a particular crime provides the "primary guarantee against bringing overly stale criminal charges." *State v. Copeland*, 8th Dist. No.

89455, 2008-Ohio-234, ¶ 10, citing *United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In 1999, the Ohio General Assembly extended the statute of limitations for rape from 6 to 20 years. *See* R.C. 2901.13(A)(3)(a). The amendment applies retroactively to offenses committed prior to the amendment, provided that the statute of limitations for such offenses had not yet expired by March 9, 1999. *Copeland* at ¶ 11. Here, the rape occurred in April 1998; therefore, the statute of limitations at the time had not yet expired when the General Assembly's amendment of R.C. 2901.13 became effective in March 1999. As a result, the 20-year statute of limitations applies to the instant offense. The indictment was filed in 2011, well within the 20-year statute of limitations.

**{¶24}** To warrant dismissal on the basis of pre-indictment delay, a defendant must present evidence establishing substantial prejudice. *State v. Kemp*, 8th Dist. No. 90029, 2013-Ohio-167, ¶ 28, citing *State v. Wade*, 8th Dist. No. 90029, 2008-Ohio-4574. If the defendant fulfills that burden, then the burden shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829.

**{¶25}** Prejudice may not be presumed from a lengthy delay. *Copeland* at ¶ 13. "In proving substantial prejudice, the defendant must show the exculpatory value of the alleged missing evidence." *Copeland* at *id.*, citing *State v. Gulley*, 12th Dist. No. CA99-02-004, 1999 Ohio App. LEXIS 6091 (Dec. 20, 1999). The mere possibility that memories will dim, witnesses will become inaccessible, or evidence will be lost is not

enough in itself to establish actual prejudice to justify the dismissal of an indictment. *United States v. Marion*, 404 U.S. 307, 325-326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). "[A] defendant must show how lost witnesses and physical evidence would have proven the defendant's asserted defense." *Kemp* at *id*.

{¶26} Leonard claims that he was prejudiced by the delay because (1) key witnesses were unavailable at trial; (2) testifying witnesses admitted their memories of the event had faded; (3) the victim's complete medical record was not available for trial; and (4) the delay eliminated Leonard's ability to challenge the reliability of the DNA. We will deal with each of these claims in turn.

{¶27} Leonard argues that two witnesses that did not testify at trial, Lila Mills and James Anderson, may have been available to testify if he had been indicted earlier. According to Detective Lessman's testimony, Mills assisted R.M. after the rape and Anderson saw R.M. being removed from a white Cadillac. He also claims that the testifying witnesses' faded memories prejudiced him. But Leonard's claims are based on speculation. Leonard has not shown how the testifying witnesses' recollection of the events would have changed the outcome at trial and speculation on the potential content of lost testimony is insufficient to show prejudice. *See State v. Adams*, 7th Dist. No. 08 MA 246, 2011-Ohio-5361, ¶ 83, citing *State v. Christman*, 7th Dist. No. 786, 1999 Ohio App. LEXIS 2486 (May 28, 1999).

{¶28} Leonard also argues that he was prejudiced because the victim's complete medical record was not available for trial. If his complete medical records had been

available, Leonard claims, they might have assisted the defense in its argument that the jury should have considered the crime of attempted rape along with or instead of rape. But a defendant must show, by concrete proof, the exculpatory value of any alleged missing evidence to prove actual prejudice. *State v. Wade*, 8th Dist. No. 90029, 2008-Ohio-4574, ¶ 45, citing *State v. Robinson*, 6th Dist. No. L-06-1182, 2008-Ohio-3498. Leonard merely speculates that the medical records may contain additional information about what the victim may have told medical personnel, and therefore has failed to present concrete proof that the missing evidence contained any exculpatory value.

**{¶29}** Finally, Leonard claims that the delay eliminated his ability to challenge the reliability of the DNA match. But Leonard had an independent lab perform its own analysis of the DNA evidence; the results of that test were not entered into evidence. There was also never any suggestion of impropriety or contamination, other than that made by the defense during closing arguments and the arguments of counsel are not evidence. Moreover, BCI analyst Brenda Geradi testified that (1) DNA does not change over time; "you either get a result or it's degraded and we can tell that it's degraded," (2) the sample in R.M.'s rape kit was not degraded, and (3) the rape kit was appropriately packaged for proper storage conditions.

**{¶30}** To support his overall claim that he was prejudiced by the pre-indictment delay, Leonard cites the Ohio Supreme Court's decision in *Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984). In *Luck*, the Ohio Supreme Court found that 15 years of

pre-indictment delay was unjustifiable because the prosecution commenced its case after the delay without any new evidence. Here, the state developed new evidence in the case approximately eight years after the crime occurred. In other words, at the time the active investigation ceased in this case, the police had not developed a suspect. At the time the indictment was handed down, the state had discovered a substantial piece of new evidence proving that Leonard was the source of the semen found in the victim. Although we are deeply troubled by the lengthy delay between the time the Cleveland Police found out about the DNA match and the time of the indictment, Leonard has been unable to show actual prejudice caused by that delay. *See Kemp*, 8th Dist. No. 97913, 2013-Ohio-167 (finding no prejudice in an eight-and-a-half year delay between the crime and indictment). Moreover, we consider the delay in light of the other uncontroverted evidence presented of his guilt, namely the DNA evidence. *See State v. Fox*, 12th Dist. No. CA2008-03-009, 2009-Ohio-556, ¶ 40.

{¶31} Based on these facts, Leonard has failed to demonstrate actual, substantial prejudice resulting from the state's delay in bringing the charges against him. Therefore, we find that Leonard failed to demonstrate that his trial counsel's failure to file a motion to dismiss for pre-indictment delay constituted ineffective assistance of counsel. Even if we assume, arguendo, that trial counsel's representation fell below an objective standard of reasonableness as a result of his failure to file a motion to dismiss, Leonard has not established he was prejudiced as a result of his trial counsel's alleged ineffectiveness or a reasonable probability that the result of the proceeding would have been different had the

motion been filed. *See Strickland* at 694.

Jury Instructions

**{¶32}** In the second assignment of error, Leonard argues that the trial court erred when it instructed the jury on the crime of rape. Because Leonard did not object to the jury instructions, we review this claim for plain error. Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. An error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id*.

**{¶33}** We review a trial court's decision on jury instructions for an abuse of discretion. *State v. Williams*, 8th Dist. No. 90845, 2009-Ohio-2026, ¶ 50. Further, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Fields*, 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

**{¶34}** Leonard claims that the trial court's jury instructions defining the term "sexual conduct" were so deficient as to constitute plain error under Crim.R. 52(B). Leonard argues that the definition the court used, defining sexual conduct as penetration of the anal "opening," was incorrect in that sexual conduct, at the time the crime occurred, was defined as penetration of the anal "cavity." According to Leonard, if the

court had correctly instructed the jury, the jury may have determined that penetration did not occur and Leonard could only be convicted of attempted rape.

{¶35} As applicable to this case, in 1998, R.C. 2907.02(A)(1)(b) defined rape as follows: "No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." In the indictment, the state had defined the sexual conduct under Count 2 as "anal penetration of the victim."

{¶36} In 1998, R.C. 2907.01(A) defined sexual conduct as "vaginal intercourse between a male and a female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another."

{¶37} In 2006, the Ohio legislature modified the definition of "sexual conduct" by substituting the word "opening" for the word "cavity" after the phrase "vaginal or anal."

{¶38} Leonard claims that the term "opening" implies a lesser form of penetration that includes the surface of buttocks only. But Leonard does not support this assertion with any citations to authority.

{¶39} However, we need not determine whether penetration into the anal cavity is distinct from penetration into the anal opening. R.M. testified that Leonard "stuck his penis in me" and "stuck [his penis] in my behind, sir. My anus." Therefore, the evidence produced by the state was sufficient to show the element of sexual conduct under either term. Thus, Leonard is unable to show that the trial court committed plain

error.

{¶40} As briefly mentioned, within the first assignment of error Leonard claimed he was prejudiced by defense counsel's failure to object to the definition of sexual conduct in the jury instructions. Having already found that there was no plain error committed with regard to the jury instructions, this argument also fails.

{¶41} Leonard further claimed that his counsel was ineffective for failing to ask for a jury instruction on attempt as to Count 2. But failure to request instructions on lesser offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. *State v. Griffie*, 74 Ohio St.3d 332, 333, 1996-Ohio-71, 658 N.E.2d 764. The record supports the conclusion that the defense's theory was that Leonard did not perpetrate the crimes against R.M.; thus, it could have been a strategic defense option not to give the jury the opportunity to find Leonard guilty of another, albeit lesser, crime. *See State v. Murphy*, 4th Dist. No. 07CA2953, 2008-Ohio-1744.

{¶42} In light of the above, the first and second assignments of error are overruled.

<u>Manifest Weight of the Evidence</u>

{¶43} In the third assignment of error, Leonard argues that his conviction on Count 2, rape, is against the manifest weight of the evidence.

{¶44} When reviewing a claim challenging the manifest weight of the evidence, the court, after reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the exceptional case in which the evidence weighs heavily against the conviction. *Id.* If "conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [finder of fact] believed the prosecution testimony." *State v. Gilliam*, 9th Dist. No. 97CA006757, 1998 Ohio App. LEXIS 3668, *5 (Aug. 12, 1998). It is primarily the finder of fact's duty to assess the credibility of witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).

**{¶45}** Leonard claims that his conviction should be reversed on these grounds because there was no physical evidence of anal rape; therefore, the jury lost its way in finding him guilty of that count. To support his position, Leonard points to the fact that no testable quantities of semen were recovered by the rape kit and to the testimony of the nurse, Tracy Douglas, who stated that she found no signs of trauma on R.M.'s rectum. Therefore, according to Leonard, in weighing this lack of physical evidence against R.M.'s testimony, the jury should have found him not guilty. We disagree.

**{¶46}** As an initial matter, there is no requirement, statutory or otherwise, that a victim's testimony be corroborated as a condition precedent to a rape conviction. *State v. Sklenar*, 71 Ohio App.3d 444, 447, 594 N.E.2d 88 (9th Dist.1991), citing *State v. Gingell*, 7 Ohio App.3d 364, 365, 455 N.E.2d 1066 (1st Dist.1982); *State v. Love*, 49 Ohio App.3d 88, 91, 550 N.E.2d 951 (1st Dist.1988). "Sexual conduct" does not require

proof of trauma. *State v. Barnes*, 1st Dist. Nos. C-790595, C-790622, and C-790636, 1980 Ohio App. LEXIS 10250, at *19 (Oct. 22, 1980). In other words, a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury. *State v. Flowers*, 10th Dist. No. 99AP-530, 2000 Ohio App. LEXIS 1933, *24 (May 4, 2000), citing *State v. Van Buskirk*, 8th Dist. No. 57800, 1994 Ohio App. LEXIS 4409 (Sept. 29, 1994).

{¶47} R.M. testified that a stranger pulled up in a white Cadillac and grabbed him. The man forced R.M. into the backseat of his car and drove around for 10-15 minutes. R.M. was unable to get out of the car because the back doors were locked and the car had a red or burgundy interior. The man kept telling R.M. to keep his head down and keep quiet. The man eventually got into the backseat of the car with R.M., forced the young boy to perform oral sex on him and then, according to R.M., "stuck his penis in me * * * stuck [his penis] in my behind * * * [m]y anus."

{¶48} Although nurse Douglas testified that she did not detect any semen on R.M.'s body during the examination, the rape kit evidenced trace amounts of semen on the rectal samples. BCI analyst Christopher Smith testified he sent the anal swabs for further testing because he had found the trace amounts of semen on the rectal samples. He explained that trace amounts of semen "mean that we identified a lesser amount of semen present or lesser amount of sperm cells on the microscope slide. * * * The rectal samples and the oral samples both had semen identified. The oral sample had more semen present on the slide * * * than the rectal samples; however, both had semen

present."

{¶49} The anal swabs were tested, but no DNA profile was obtained from them. A DNA profile was obtained from the oral samples, however, and it matched Leonard's DNA. This is consistent with R.M.'s testimony that it was the same person who forced him to perform oral sex on him and who digitally and anally raped him. R.M.'s testimony is further bolstered by Leonard's wife, who confirmed that she owned a white Cadillac in 1998 that Leonard drove. Although, according to her, the car was a two-door with a white interior, we recognize that the trier of fact was able to consider the credibility of the individual witnesses and reach a conclusion based on the totality of the evidence.

{¶50} After reviewing the entire record and weighing the evidence and all reasonable inferences, including the credibility of the witnesses, we cannot say that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶51} The third assignment of error is overruled.

{¶52} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court

for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
EILEEN A. GALLAGHER, J., CONCUR