[Cite as *State v. Fips*, 2016-Ohio-5402.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
## No. 103242

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEVANTE D. FIPS

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589996-A

**BEFORE:** Celebrezze, J., E.A. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** August 18, 2016

**ATTORNEYS FOR APPELLANT**

Brandon J. Henderson
Justin Weatherly
Henderson & Weatherly Co., L.P.A.
3238 Lorain Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Anne Kiran Mikhaiel
          Lon'Cherie' Billingsley
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, Devante Fips ("appellant"), brings this appeal challenging his convictions for rape, gross sexual imposition, and kidnapping. Specifically, appellant argues that (1) his convictions were not supported by sufficient evidence, (2) his convictions were against the manifest weight of the evidence, and (3) the trial court erred by admitting "other-acts" evidence. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

**{¶2}** In CR-14-589996-A, the Cuyahoga County Grand Jury returned a seven-count indictment charging appellant with (1) rape, in violation of R.C. 2907.02(A)(1)(B), with a sexually violent predator specification, (2) kidnapping, in violation of R.C. 2905.01(A)(4), with sexually violent predator and sexual motivation specifications, (3) rape, in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification, (4) kidnapping, in violation of R.C. 2905.01(A)(4), with sexually violent predator and sexual motivation specifications, (5) rape, in violation of R.C. 2907.02(A)(2), with a sexually violent predator specification, (6) gross sexual imposition, in violation of R.C. 2907.05(A)(1), and (7) kidnapping, in violation of R.C. 2905.01(A)(4), with sexually violent predator and sexual motivation specifications.

**{¶3}** The counts alleged in the indictment were committed against the same victim

— a minor relative of appellant's ("victim"). Counts 1 through 4 pertain to a 2013 incident, and Counts 5, 6, and 7 pertain to an October 1, 2014 incident. Appellant pled not guilty to the indictment.

{¶4} Prior to trial, the state dismissed Counts 1, 2, 3, and 4. Appellant filed a motion in limine seeking to prevent the state from admitting evidence related to the 2013 incident between appellant and the victim. Appellant argued that evidence of the 2013 incident constituted inadmissible "other-acts" evidence under Evid.R. 404(B). The state opposed appellant's motion, arguing that the evidence related to the 2013 incident, as well as evidence related to a 2007 sexual "touching" incident, was necessary background information and that the evidence was admissible under Evid.R. 404(B) to show motive, opportunity, and lack of consent. The trial court denied appellant's motion in limine, concluding that the evidence of appellant's prior acts "go to the context and just tell the entire story between both the alleged victim and the defendant as well as the [appellant's] intent[.]"

{¶5} The parties were unable to reach a plea agreement, and appellant elected to proceed to trial. The trial court bifurcated the sexually violent predator specifications. A jury trial commenced on April 27, 2015.

{¶6} Appellant moved for acquittal under Crim.R. 29 at the close of the state's case and at the close of all the evidence. The trial court denied both of appellant's motions. At the close of trial, the jury found appellant guilty of all three counts. The state dismissed the sexually violent predator specifications charged in Counts 5 and 7.

The trial court order a presentence investigation report and set the matter for sentencing.

{¶7} The parties agreed that Counts 5 and 7 merged for sentencing purposes. The state elected to sentence appellant on Count 5. The trial court sentenced appellant to a prison term of five years on Count 5 and a prison term of 18 months on Count 6. The trial court ordered the counts to run concurrently for a total prison term of five years at Lorain Correctional Institution. The trial court credited appellant with 44 days of time served. The trial court classified appellant as a Tier III sex offender, ordered appellant to register as a child victim offender, and imposed lifetime in-person verification every 90 days.

{¶8} Appellant filed the instant appeal assigning three errors for review:

I. The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that the appellant was guilty of rape, gross sexual imposition, and kidnapping.

II. Appellant's convictions for rape, gross sexual imposition, and kidnapping were against the manifest weight of the evidence.

III. The trial court erred to the prejudice of the appellant when it permitted the admission of "other acts evidence" over the objection of counsel.

## II. Law and Analysis

### A. Sufficiency

{¶9} In his first assignment of error, appellant argues that there is insufficient evidence to support his convictions.

{¶10} Crim.R. 29(A) governs motions for acquittal and provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. When reviewing the

denial of a Crim.R. 29(A) motion, an appellate court must evaluate whether the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus.

{¶11} An appellate court reviews a denial of a Crim.R. 29 motion for acquittal using the same standard that is used to review a sufficiency of the evidence claim. *State v. Carter*, 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). When reviewing the sufficiency of the evidence to support a criminal conviction, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶12} In the instant matter, appellant was convicted of rape, in violation of R.C. 2907.02(A)(2), gross sexual imposition, in violation of R.C. 2907.05(A)(1), and kidnapping, in violation of R.C. 2905.01(A)(4). R.C. 2907.02(A)(2), rape, provides, "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." R.C. 2907.05(A)(1), gross sexual imposition, provides:

> [n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.

R.C. 2905.01(A)(4), kidnapping, provides:

[n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

**{¶13}** In support of his sufficiency challenge, appellant claims that there was no evidence that he used force against the victim. We disagree.

**{¶14}** The victim testified about the statement she gave to Clarissa Larkin ("Larkin") on October 1, 2014. Larkin is a social worker with the Cuyahoga County Division of Children and Family Services. The victim told Larkin that appellant raped her. She told Larkin that she entered appellant's room, appellant closed the bedroom door, and that appellant pulled her back when she tried to open the door. She told Larkin that appellant touched her vagina and that she tried to push appellant off of her, but was unable to do so. She told Larkin that appellant picked her up and put her on his bed. She told Larkin that appellant pulled down her pants, pulled down his pants, and penetrated her vagina with his penis. She told Larkin that when appellant finished, she went to the bathroom, returned to her bedroom, and sent her friend, M.R., a text message that appellant had just raped her.

**{¶15}** Larkin testified that on October 1, 2014, she responded to an emergency report that the victim was being raped by her relative. She testified that she made an unannounced visit to the house and arranged to interview the victim at a neutral location to determine her safety. She testified that during the interview, the victim stated that she did not feel safe at home because of appellant.

{¶16} Laura Gaertner ("Gaertner"), a sexual assault nurse examiner, testified that she examined the victim at Fairview Hospital on October 1, 2014. Gaertner read the following narrative of the incident, based on the victim's description, from the victim's medical records:

> About 4:00 this morning, I woke up to go to the bathroom. I was going back to my room. [Appellant] stopped me in the hall. He said, "Come here. I want to show you something."
>
> I went into his room and he closed the door. I tried to leave and he would not let me leave. He pulled me close and I pushed him away. He pulled me close again and put his finger in my vagina. He picked me up and put me in the bed.
>
> He started doing it for about five to seven minutes. He was holding me close and holding me down by my sides and hips with both of his hands. When he stopped being so aggressive, I could push him off.
>
> I walked into my room. He didn't come out of his room after me. I saw him in the kitchen this morning and he didn't say anything.
>
> * * *
>
> He pulled my shorts and underwear down. He started putting his fingers in me and then he put his penis in my vagina.

{¶17} In *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988), the defendant, a 28-year-old male, was charged with raping his four-year-old daughter by force. The victim testified that the defendant removed her underwear and laid her down on a bed. *Id*. at 58. The Ohio Supreme Court noted that this testimony "evidenc[ed] acts of compulsion and restraint separate and aside from the force needed to commit the rape." *Id*. In the instant matter, the victim's statements that appellant prevented her from leaving his room, grabbed her when she tried to push him away, picked her up and

put her in the bed, and pulled down her underwear demonstrate acts of compulsion and constraint that are independent of the act of rape.

{¶18} Viewing the evidence in a light most favorable to the state, a rational jury could have determined beyond a reasonable doubt that appellant was guilty of rape, gross sexual imposition, and kidnapping. Accordingly, appellant's first assignment of error is overruled.

### B. Manifest Weight

{¶19} In his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence.

{¶20} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. The *Thompkins* court explained:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis [sic.]) Black's [Law Dictionary (6 Ed.1990) 1433,] 1594.
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. *Tibbs [v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211,

72 L.Ed.2d 652 (1982)]. *See, also, State v. Martin*, [20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983)] ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*

**{¶21}** In the instant matter, appellant argues that the victim's initial allegations are unreliable, emphasizing that the victim recanted her allegations and that the victim's allegations were not supported by the physical evidence. Appellant claims that the only physical evidence of the element of force was a bruise on the victim's arm. Appellant contends, pointing to Gaertner's testimony, that the bruise does not demonstrate that he used force against the victim.

**{¶22}** Gaertner testified that "multiple things" could have caused the bruise and that the bruise "could have been something unrelated to the incident." Appellant emphasizes that aside from the bruise, there was no physical evidence that he used force against the victim. However, "a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury." *State v.*

*Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46.    Gaertner testified that it is "very common" for sexual assault victims to have no injuries.

**{¶23}** The state's theory of the case was that the victim's initial statements, in which she asserted that appellant raped her, were truthful and that the victim later changed her story because she was influenced by her family members and did not want appellant to face any consequences.

**{¶24}** On October 1, 2014, the victim told M.R., Larkin, Gaertner, and Cleveland police officer Adrian Neagu ("Neagu") that appellant raped her; on October 2, 2014, the victim told Detective Elaine Evans from the Cleveland Police Department's Sex Crimes Unit that appellant raped her.    At trial, the victim testified that her mother appeared to be sad and was crying at the hospital.    She testified that while she was at the hospital, she learned that appellant had been arrested.    She testified that when she got home from the hospital, everyone appeared to be sad that appellant was no longer at the house.    She testified that she felt bad that appellant was no longer in the house as a result of the text message that she sent to M.R.    She testified that she did not want to see appellant face any consequences for the 2014 incident, just as she did not want him to face any consequences for the 2013 "touching" incident.

**{¶25}** After some time had passed, the victim recanted her initial statements and claimed that the sex with appellant was consensual rather than by force.    The victim testified that on October 4, 2014, she told her sister that appellant did not rape her and that she had been lying about the incident.    She testified that she also told her mom that

appellant did not rape her. She testified that she called the Rape Crisis Center and that her mom called Detective Evans to report the change in her story. The victim testified that Detective Evans invited her and her mom to come to her office to discuss the change in her story. She testified that before meeting with Detective Evans, she met with a private investigator on October 11 to discuss the change in her story.

{¶26} The victim offered inconsistent explanations about why she initially said that appellant raped her, including: (1) she was mad at appellant for getting into an argument with her boyfriend, C.N., (2) she wanted attention from her friend M.R., who had been distant ever since she started dating C.N., (3) she wanted M.R. and C.N. to understand why appellant was so protective of her and why he got into an argument with C.N., and (4) she was embarrassed that she had sex with appellant.

{¶27} After reviewing the record, we cannot say that this is "an exceptional case" in which the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions for rape, gross sexual imposition, and kidnapping were against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. The jury was permitted to weigh the victim's trial testimony that the sex with appellant was consensual against the victim's initial statements that appellant raped her. The state presented evidence from which the jury could have reasonably concluded that the victim's recantation was designed to protect herself, her family, or appellant. We cannot say that the jury clearly lost its way creating such a manifest miscarriage of justice simply because it found the victim's original account of the incident to be more

credible than her subsequent recantation and trial testimony.

{¶28} Accordingly, appellant's convictions are not against the manifest weight of the evidence.    Appellant's second assignment of error is overruled.

### C. Other-Acts Evidence

{¶29} In his third assignment of error, appellant argues that the trial court abused its discretion and committed reversible error when it admitted other-acts evidence in violation of R.C. 2945.59 and Evid.R. 404(B).   Specifically, appellant argues that the testimony from the victim regarding the 2007 and 2013 sexual incidents was inadmissible.

{¶30} R.C. 2945.59 provides:

[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

Furthermore, Evid.R. 404(B) provides:

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.   In criminal cases, the proponent of evidence to be offered under this rule shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

{¶31}   A trial court has broad discretion regarding the admissibility of other-acts

evidence under Evid.R. 404(B), and its decision will not be interfered with absent an abuse of that discretion that created material prejudice. *See State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 81. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶32} In *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, the Ohio Supreme Court set forth the following three-step analysis that should be used by trial courts when considering the admissibility of other-acts evidence:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R. 403.

*Id*. at ¶ 20.

{¶33} First, in the instant matter, the 2007 and 2013 incidents involving sexual "touching" — which the victim described as "experimental" — have relevance to the

question of whether the sexual intercourse between the victim and appellant in 2014 was consensual. Arguably, this evidence is relevant to making a fact determination in the instant action more or less probable than it would be without the evidence. Accordingly, the first prong of the *Williams* test is satisfied.

{¶34} Second, at trial, the state argued that the other-acts evidence was admissible as background information. Furthermore, the state argued that the evidence was admissible under Evid.R. 404(B) to show motive, opportunity, and lack of consent. The state emphasized that it presented the other-acts evidence to show appellant's scheme and progression — from consensual and experimental touching to forcible rape — and to help the jury understand why the victim recanted her rape allegation. After reviewing the record, we accept that the state did not offer the evidence to prove appellant's character in order to show activity in conformity therewith.

{¶35} The victim considered the 2007 and 2013 touching incidents to be "experimenting." She did not disclose the incidents to family members or authorities because she "wanted it to happen[.]" She testified that she disclosed the touchings to her sister in 2013 when she no longer wanted them to occur.

{¶36} The victim testified that the 2007 and 2013 incidents occurred in the family home. She testified that after learning about the touching incidents, her parents installed locks on the doors of both her bedroom and appellant's. Prior to the 2014 incident, she testified that she decided to move into another bedroom that did not have the same lock on the door.

**{¶37}** The victim testified that after reporting the 2013 touching incident to her sister and her parents, she did not want to see appellant face any consequences. Furthermore, the victim testified that she did not want to see appellant face any consequences for the 2014 incident.

**{¶38}** For the foregoing reasons, we find that the evidence was offered to show appellant's motive, opportunity, and intent to engage in sexual conduct with the victim, regardless of whether or not she consented. Accordingly, the second prong of the *Williams* test is satisfied.

**{¶39}** Third, we find that the danger of unfair prejudice did not substantially outweigh the probative value of the challenged testimony. Unfairly prejudicial evidence is that which might result in an improper basis for a jury decision. *Oberlin v. Akron Gen. Med. Ctr.*, 91 Ohio St.3d 169, 172, 743 N.E.2d 890 (2001). There, the Ohio Supreme Court explained that evidence may be unfairly prejudicial if it appeals to the jury's emotions or inflames the jury's emotional sympathies. *Id.* The testimony that appellant challenges does not constitute unfairly prejudicial evidence. The 2007 and 2013 incidents involved touchings, whereas the 2014 incident involved sexual intercourse. Furthermore, the victim neither described the 2007 and 2013 incidents as forceful and nonconsensual nor as rape. Instead, she considered the touchings to be experimental.

**{¶40}** Assuming arguendo that the other-acts evidence was improperly admitted, we would find its admission to be harmless because the outcome of the trial would have

been the same even if the trial court had not admitted the challenged testimony. Even without the victim's testimony of the 2007 and 2013 incidents, the state presented substantial evidence of appellant's guilt through the victim's testimony of the 2014 incident and her initial statements to M.R., Larkin, Gaertner, and Officer Neagu.

{¶41} In addition to R.C. 2945.59 and Evid.R. 404(B), appellant argues that the other-acts evidence was inadmissible under the rape shield law, codified in R.C. 2907.02(D). Appellant's reliance on the rape shield law is misplaced.

{¶42} R.C. 2907.02(D) provides:

Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or *the victim's past sexual activity with the offender*, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

(Emphasis added.) In the instant matter, the other-acts evidence involves the victim's past sexual activity with appellant. Thus, the evidence falls within a statutory exception and is not inadmissible under the rape shield law.

{¶43} Finally, appellant argues that the trial court erred by failing to give a limiting instruction regarding the victim's other-acts testimony. Appellant did not request a limiting instruction in regard to the victim's testimony. The Ohio Supreme Court has held that a "[d]efendant's failure to request [a limiting] instruction at trial waive[s] any error in the trial court's failure to give such instructions." *State v. Grant*, 67 Ohio St.3d 465, 472, 620 N.E.2d 50 (1993). Accordingly, appellant has waived all

but plain error. *State v. Edgerson*, 8th Dist. Cuyahoga No. 101283, 2015-Ohio-593, ¶ 15.

**{¶44}** Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. However, an error rises to the level of plain error only if, but for the error, the outcome of the proceedings would have been different. *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

**{¶45}** In *Grant*, the Ohio Supreme Court held that the failure to request the limiting instructions did not constitute plain error because the absence of such instructions did not affect the jury's verdict and nothing suggested the jury used this evidence to convict the defendant on the theory he was a bad person. *Id*. at 472. In the instant matter, there is no reasonable probability that the victim's testimony regarding the 2007 and 2013 incidents — which she described as "experimenting" — contributed to appellant's convictions. Thus, the trial court's failure to provide a limiting instruction does not constitute plain error.

**{¶46}** After reviewing the record, we find that the other-acts testimony was admissible under Evid.R. 404(B). Accordingly, appellant's third assignment of error is overruled.

### III. Conclusion

**{¶47}** Appellant's rape, gross sexual imposition, and kidnapping convictions are

supported by sufficient evidence and are not against the manifest weight of the evidence. The trial court did not abuse its discretion by admitting the other-acts evidence regarding the 2007 and 2013 incidents, because the victim's testimony was admissible under Evid.R. 404(B). Accordingly, appellant's assignments of error are overruled.

**{¶48}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR